| Fill in this information to identify the case: | |
|---|---|
| United States Bankruptcy Court for the: <br> DISTRICT OF NEW JERSEY | |
| Case number *(if known)* _____  Chapter **11** | ☐ Check if this is an amended filing |

## Official Form 201
## Voluntary Petition for Non-Individuals Filing for Bankruptcy    04/25

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| | | |
|---|---|---|
| 1. | **Debtor's name** | **COLLEGE INN FOODS** |
| 2. | **All other names debtor used in the last 8 years** <br> Include any assumed names, trade names and *doing business as* names | |
| 3. | **Debtor's federal Employer Identification Number** (EIN) | **94-6068554** |

| 4. | **Debtor's address** | **Principal place of business** <br><br> **205 North Wiget Lane** <br> **Walnut Creek, CA 94598** <br> Number, Street, City, State & ZIP Code <br><br> **Contra Costa** <br> County | **Mailing address, if different from principal place of business** <br><br> _____ <br> P.O. Box, Number, Street, City, State & ZIP Code <br><br> **Location of principal assets, if different from principal place of business** <br><br> _____ <br> Number, Street, City, State & ZIP Code |
|---|---|---|---|
| 5. | **Debtor's website** (URL) | www.delmonte.com; www.delmontefoods.com | |
| 6. | **Type of debtor** | ■ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP)) <br> ☐ Partnership (excluding LLP) <br> ☐ Other. Specify: _____ | |

Debtor  **COLLEGE INN FOODS**  Case number (*if known*)
       Name

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
☐ Railroad (as defined in 11 U.S.C. § 101(44))
☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))
■ None of the above

B. *Check all that apply*

☐ Tax-exempt entity (as described in 26 U.S.C. §501)
☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)
☐ Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes.

__3114__

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check one:*

☐ Chapter 7
☐ Chapter 9
■ Chapter 11. *Check **all** that apply*:

  ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,424,000 (amount subject to adjustment on 4/01/28 and every 3 years after that).
  ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).
  ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and it chooses to proceed under Subchapter V of Chapter 11.
  ☐ A plan is being filed with this petition.
  ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).
  ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.
  ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**
If more than 2 cases, attach a separate list.

■ No.
☐ Yes.

District _____  When _____  Case number _____
District _____  When _____  Case number _____

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

☐ No
■ Yes.

| Debtor | **COLLEGE INN FOODS** | Case number (*if known*) | |
|---|---|---|---|
| | Name | | |

| List all cases. If more than 1, attach a separate list | Debtor | **See attached list** | Relationship | |
| | District | | When | | Case number, if known | |

---

**11. Why is the case filed in *this district*?**

*Check all that apply:*

☐ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

■ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

---

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

■ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.
  What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____
  Number, Street, City, State & ZIP Code

**Is the property insured?**
☐ No
☐ Yes. Insurance agency _____
    Contact name _____
    Phone _____

---

**Statistical and administrative information**

**13. Debtor's estimation of available funds**

*Check one:*

■ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available to unsecured creditors.

---

**14. Estimated number of creditors**

| | | |
|---|---|---|
| ☐ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ■ 10,001-25,000 | ☐ More than100,000 |
| ☐ 200-999 | | |

**15. Estimated Assets**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ■ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

**16. Estimated liabilities**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ■ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

Debtor  **COLLEGE INN FOODS**  Case number (*if known*)
　　　　Name

### Request for Relief, Declaration, and Signatures

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  **07/01/2025**
　　　　　　　MM / DD / YYYY

X  **/s/ Jonathan Goulding**　　　　　　　　　　　**Jonathan Goulding**
　　Signature of authorized representative of debtor　　Printed name

Title  **Chief Restructuring Officer**

**18. Signature of attorney**

X  **/s/ Michael D. Sirota**　　　　Date  **07/01/2025**
　　Signature of attorney for debtor　　　　　MM / DD / YYYY

**Michael D. Sirota**
Printed name

**Cole Schotz P.C.**
Firm name

**Court Plaza North**
**25 Main Street**
**Hackensack, NJ 07601**
Number, Street, City, State & ZIP Code

Contact phone  **201-489-3000**　　Email address  **msirota@coleschotz.com**

**014321986 NJ**
Bar number and State

| **Fill in this information to identify the case**: | |
|---|---|
| United States Bankruptcy Court for the: **District of New Jersey** (State) | |
| Case number *(if known)*: Chapter __11__ | |

☐ Check if this is an amended filing

## Rider 1
## Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor

On the date hereof, each of the entities listed below (collectively, the "Debtors") filed a petition in the United States Bankruptcy Court for the District of New Jersey for relief under chapter 11 of title 11 of the United States Code. The Debtors have moved for joint administration of these cases under the case number assigned to the chapter 11 case of Del Monte Foods Corporation II Inc.

- Del Monte Foods Corporation II Inc.
- Del Monte Foods Holdings Limited
- Del Monte Foods Holdings II, Inc.
- Del Monte Foods Holdings, Inc.
- Del Monte Foods, Inc.
- Sager Creek Foods, Inc.
- S & W Fine Foods, Inc.
- College Inn Foods
- Contadina Foods, Inc.
- Hi Continental Corporation
- Joyba, Inc.
- Kitchen Basics, Inc.
- Green Thumb Foods
- Del Monte Ventures, LLC
- Del Monte Chilled Fruit Snacks, LLC
- DM Intermediate Corporation
- DM Intermediate II Corporation
- Del Monte Mexico Holdings LLC

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| COLLEGE INN FOODS, | ) Case No. 25-[____] (___) |
| | ) |
| Debtor. | ) |
| | ) |

**LIST OF EQUITY SECURITY HOLDERS[1]**

| Equity Holder | Address of Equity Holder | Percentage of Equity Held |
|---|---|---|
| Del Monte Foods Corporation II Inc. | 205 N Wiget Ln<br>Walnut Creek, CA 94598 | 100% |

---

[1] This list serves as the disclosure required to be made by the debtor pursuant to Rule 1007 of the Federal Rules of Bankruptcy Procedure. All equity positions listed indicate the record holder of such equity as of the date of commencement of the chapter 11 case.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | ) Chapter 11 |
| COLLEGE INN FOODS, | ) Case No. 25-[____] (___) |
| Debtor. | ) |

**CORPORATE OWNERSHIP STATEMENT**

Pursuant to Rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure, the following are corporations, other than a government unit, that directly or indirectly own 10% or more of any class of the debtor's equity interest:

| Shareholder | Approximate Percentage of Shares Held |
|---|---|
| Del Monte Foods Corporation II Inc. | 100% |

Fill in this information to identify the case:

Debtor name: Del Monte Foods Corporation II Inc.
United States Bankruptcy Court for the: District of New Jersey
Case number (If known): _____

☐ Check if this is an amended filing

Official Form 204

# Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders

12/1

A list of creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim: if the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | SENECA FOODS<br>350 WILLOW BROOK OFFICE PARK<br>FAIRPORT, NY 14450<br>UNITED STATES | MICHAEL WILCOTT<br>CHIEF FINANCIAL OFFICER<br>EMAIL - mwolcott@senecafoods.com<br>PHONE - 585-495-4125 | Trade Payable | | | | $ 19,922,633 |
| 2 | TRANSPLACE TEXAS LP<br>3010 GAYLORD PKY<br>SUITE 200<br>FRISCO, TX 75034<br>UNITED STATES | LIOR RON<br>CHIEF EXECUTIVE OFFICER<br>EMAIL - laurenth@uberfreight.com<br>PHONE - 718-291-3333 | Trade Payable | | | | $ 9,097,810 |
| 3 | STEUBEN FOODS INC<br>1150 MAPLE RD<br>ELMA, NY 14059<br>UNITED STATES | BRIAN MANKA<br>CHIEF FINANCIAL OFFICER<br>EMAIL - bmanka@steubenfoods.com<br>PHONE - (716) 655-4000 | Trade Payable | | | | $ 6,982,359 |
| 4 | ES3 LLC<br>6 OPTICAL AVENUE<br>KEENE, NH 03431<br>UNITED STATES | MATT RZUCIDLO<br>VICE PRESIDENT<br>EMAIL - matt.rzucidlo@es3.com<br>PHONE - (603)354-6119 | Trade Payable | | | | $ 4,043,667 |
| 5 | RESER'S FINE FOODS, INC.<br>15570 SW JENKINS RD<br>BEAVERTON, OR 97006<br>UNITED STATES | GARY MCEVOY<br>VICE PRESIDENT OPERATIONS<br>EMAIL - garym@resers.com<br>PHONE - 503-643-6431 | Trade Payable | | | | $ 3,081,895 |
| 6 | ACCENTURE INTERNATIONAL LIMITED<br>395 9TH AVENUE<br>NEW YORK, NY 10001<br>UNITED STATES | JULIE SWEET<br>CHIEF EXECUTIVE OFFICER<br>EMAIL - julie.sweet@accenture.com | Trade Payable | | | | $ 2,942,818 |
| 7 | PURCELL INTERNATIONAL<br>800 ELLINWOOD WAY<br>PLEASANT HILL, CA 94523<br>UNITED STATES | COLLEN PURCELL-KANGAS<br>PRESIDENT<br>EMAIL - colleen@purcell-intl.com<br>PHONE - 925-933-6100 | Trade Payable | | | | $ 2,456,452 |
| 8 | FORT DEARBORN COMPANY<br>6111 N. RIVER RD<br>FLOOR 8<br>ROSEMONT, IL 60018<br>UNITED STATES | LINN HARSON<br>CHIEF LEGAL OFFICER<br>EMAIL - linn.harson@mcclabel.com<br>PHONE - (847) 427-5354 | Trade Payable | | | | $ 1,900,078 |
| 9 | MCCALL FARMS INC<br>6615 SOUTH IRBY STREET<br>EFFINGHAM, SC 29541<br>UNITED STATES | MCCALL SWINK<br>CO-PRESIDENT<br>EMAIL - mswink@mccallfarms.com | Trade Payable | | | | $ 1,747,422 |
| 10 | VENUS GROWERS AGRICULTURAL<br>R.R STATION OF VERIA<br>PO BOX 3<br>VERIA, 59 131<br>GREECE | STELIOS THEODOULIDIS<br>CHIEF EXECUTIVE OFFICER<br>EMAIL - s.theodoulidis@venusgrowers.gr<br>PHONE - +30 23310 23311 | Trade Payable | | | | $ 1,733,071 |
| 11 | BEARD NEW YORK VII<br>530 11TH STREET<br>MODESTO, CA 95354<br>UNITED STATES | DILLON OLVERA<br>CHIEF EXECUTIVE OFFICER<br>EMAIL - dolvera@beardland.com | Trade Payable | | | | $ 1,674,032 |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim if the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 12 | ANHUI SUZHOU SCIENCE FOODSTUFF ECONOMIC DEVELOPMENT ZONE DANGSHAN COUNTY SUZHOU CITY ANHUI, 235099 CHINA | LOU DEFU CHAIRMAN EMAIL - canfoodhy@163.com kefu@qixin.com PHONE - 0557-8036638 | Trade Payable | | | | $ 1,616,823 |
| 13 | CIRCANA LLC 203 NORTH LASALLE ST STE 1500 CHICAGO, IL 60601 UNITED STATES | STUART AITKEN CHIEF EXECUTIVE OFFICER EMAIL - stuart.aitken@circana.com | Trade Payable | | | | $ 1,566,724 |
| 14 | SADDLE CREEK CORPORATION 3010 SADDLE CREEK ROAD LAKELAND, FL 33801 UNITED STATES | MARK CABRERA CHIEF EXECUTIVE OFFICER EMAIL - mark.cabrera@sclogistics.com PHONE - (863) 665-0966 | Trade Payable | | | | $ 1,352,073 |
| 15 | SEA WATCH INTERNATIONAL LTD 8978 GLEBE PARK DR EASTON, MD 21601 UNITED STATES | BERNIE CARR CHIEF FINANCIAL OFFICER EMAIL - bernie.carr@seawatch.com PHONE - 410-822-7500 | Trade Payable | | | | $ 1,319,823 |
| 16 | BARRY-WEHMILLER DESIGN GROUP INC 8027 FORSYTH BLVD SUITE 800 ST. LOUIS, MO 63105 UNITED STATES | DAVE STAHLMAN CHIEF FINANCIAL OFFICER EMAIL - dave.stahlman@barry-wehmiller.com | Trade Payable | | | | $ 1,188,397 |
| 17 | CRITES SEED INC 212 W 8TH ST MOSCOW, ID 83843 UNITED STATES | ANDY JOHNSON CHIEF EXECUTIVE OFFICER EMAIL - andy@critesseed.com PHONE - 208-882-5519 | Trade Payable | | | | $ 1,056,324 |
| 18 | CROWN CORK & SEAL USA, INC. 770 TOWNSHIP LINE ROAD YARDLEY, PA 19067 UNITED STATES | KEVIN CLOTHIER CHIEF FINANCIAL OFFICER EMAIL - kevin.clothier@crowncork.com | Trade Payable | | | | $ 978,985 |
| 19 | NATIONS ROOF 851 E I-65 SERVICE ROAD SUITE 300 MOBILE, AL 36606 UNITED STATES | JAKE HYATT CHIEF EXECUTIVE OFFICER EMAIL - jhyatt@nationsroof.com | Trade Payable | | | | $ 932,123 |
| 20 | DELMO 11/12 (DE) LLC ONE MANHATTAN WEST 395 9TH AVE 58TH FLOOR NEW YORK, NY 10001 UNITED STATES | JASON FOX CHIEF EXECUTIVE OFFICER EMAIL - jfox@wpcarey.com | Trade Payable | | | | $ 923,025 |
| 21 | HINTZ AP INC 29 RD 7 NW EPHRATA, WA 98823 UNITED STATES | GILBERT HINTZ PRESIDENT EMAIL - eric.davis@benchmarkfarms.com PHONE - 509-860-5939 | Litigation | | | | $ 881,500 |
| 22 | INSTACART 50 BEALE STREET SUITE 600 SAN FRANCISCO, CA 94105 UNITED STATES | EMILY REUTER CHIEF FINANCIAL OFFICER EMAIL - emily.reuter@instacart.com | Trade Payable | | | | $ 781,612 |
| 23 | 55 OAKWC OWNER LLC 865 SOUTH FIGUEROA STREET SUITE 2800 LOS ANGELES, CA 90017 UNITED STATES | RACHEL M. SANDERS ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP EMAIL - RSANDERS@ALLENMATKINS.COM PHONE - (213) 622 - 5555 | Trade Payable | | | | $ 706,734 |
| 24 | WORKDAY INC 6110 STONERIDGE MALL RD PLEASANTON, CA 94588 UNITED STATES | CARL ESCHENBACH CHIEF EXECUTIVE OFFICER EMAIL - carl.eschenbach@workday.com | Trade Payable | | | | $ 557,364 |
| 25 | MEKANISM INC 570 PACIFIC AVE 3RD FLOOR SAN FRANCISCO, CA 94133 UNITED STATES | NANCY KAPPLOW CHIEF FINANCIAL OFFICER EMAIL - nancy.kapplow@mekanism.com PHONE - 212-463-1000 | Trade Payable | | | | $ 515,084 |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim if the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 26 | SPC OPERATIONS PTY LTD<br>3 BRISTOL STREET<br>SUITE 4<br>LEVEL 1<br>ESSENDON FIELDS VIC,  3041<br>AUSTRALIA | ROBERT LERVASI<br>CHIEF EXECUTIVE OFFICER<br>EMAIL - robert.iervasi@spc.com.au | Trade Payable | | | | $ 486,246 |
| 27 | DONNELLEY FINANCIAL SOLUTIONS<br>35 W WACKER DR<br>CHICAGO, IL  60601<br>UNITED STATES | DAN LEIB<br>CHIEF EXECUTIVE OFFICER<br>EMAIL - dan.leib@dfinsolutions.com | Trade Payable | | | | $ 481,796 |
| 28 | CHEP USA<br>5897 WINDWARD PKWY<br>ALPHARETTA, GA  30005<br>UNITED STATES | XAVIER GARIJO<br>CHIEF EXECUTIVE OFFICER<br>EMAIL - xavier.garijo@chep.com | Trade Payable | | | | $ 469,812 |
| 29 | PENSION BENEFIT GUARANTY CORPORATION<br>445 12TH STREET SW<br>WASHINGTON, DC  20024-2101<br>UNITED STATES | KAREN MORRIS<br>CHIEF LEGAL OFFICER<br>EMAIL - kim.erin@pbgc.gov | Pension Obligations | Contingent, Unliquidated | | | Undetermined |
| 30 | GATLING-LEE V. DMFI<br> DOVEL & LUNER, LLP<br>201 SANTA MONICA BLVD., SUITE 600<br>SANTA MONICA, CA 90401<br><br>BROSLAVSKY & WEINMAN, LLP<br>1500 ROSECRANS AVE., SUITE 500<br>MANHATTAN BEACH, CA 90266 | SIMON FRANZINI & JONAS B. JACOBSON<br>PARTNERS AT DOVEL & LUNER<br>EMAIL -  simon@dovel.com<br>jonas@dovel.com<br>PHONE - (310) 656 - 7066<br>BROSLAVSKY & WEINMAN<br>ZACK BROSLAVSKY<br>CO-FOUNDER<br>EMAIL - zbroslavsky@bwcounsel.com<br>PHONE - (310) 575 - 2550 | Class Action - Litigation | Contingent, Unliquidated, Disputed | | | Undetermined |

**Fill in this information to identify the case:**

Debtor name: **COLLEGE INN FOODS**

United States Bankruptcy Court for the: DISTRICT OF NEW JERSEY

Case number (if known): _____

☐ Check if this is an amended filing

Official Form 202
# Declaration Under Penalty of Perjury for Non-Individual Debtors 12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

**WARNING -- Bankruptcy fraud is a serious crime.**  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ☐ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
- ☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
- ☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
- ☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
- ☐ *Schedule H: Codebtors* (Official Form 206H)
- ☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
- ☐ Amended *Schedule* _____
- ■ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
- ■ Other document that requires a declaration    **Corporate Ownership Statement and List of Equity Security Holders**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   07/01/2025      X   **/s/ Jonathan Goulding**
                                  Signature of individual signing on behalf of debtor

                                  **Jonathan Goulding**
                                  Printed name

                                  **Chief Restructuring Officer**
                                  Position or relationship to debtor

**Resolutions of the Board of Directors (the "Boards") of**
**Del Monte Foods Holdings Limited,**
**Del Monte Foods Holdings II, Inc.,**
**Del Monte Foods Holdings, Inc.,**
**Del Monte Foods, Inc.,**
**DM Intermediate Corporation,**
**DM Intermediate II Corporation,**
**Del Monte Foods Corporation II Inc.,**
**Contadina Foods, Inc.,**
**Sager Creek Foods, Inc.,**
**S & W Fine Foods, Inc.,**
**Hi Continental Corporation,**
**College Inn Foods,**
**Joyba, Inc.,**
**Kitchen Basics, Inc.,**
**and**
**Green Thumb Foods,**
**the Manager (the "Manager") of**
**Del Monte Mexico Holdings LLC**
**and**
**the Sole Members (the "Sole Members" and together with the Boards and the Manager, the**
**"Governing Bodies") of each of**
**Del Monte Ventures, LLC**
**and**
**Del Monte Chilled Fruit Snacks, LLC**
**(each a "Company Party" and all of the foregoing, collectively, the "Companies")**

**Adopted at a Joint Meeting of the Governing Bodies**
**held on June 30, 2025**

**WHEREAS**, the Governing Bodies have reviewed and considered: (a) presentations and other materials prepared and presented by the management team of the Companies ("Management") and their financial and legal advisors (collectively, the "Advisors") regarding the liabilities, obligations, and liquidity of the Companies, the strategic and financial alternatives available to the Companies, and the effect of the foregoing on each Company Party's business operations; (b) the information and advice previously provided to and reviewed by the Governing Bodies, and (c) the related matters on and before the date hereof;

**WHEREAS**, the Governing Bodies had adequate opportunity to consult with Management and the Advisors regarding such presentations and materials, to obtain additional information, and to fully consider each of the strategic alternatives available to the Companies and the recommendations of Management and the Advisors;

**WHEREAS**, the Governing Bodies have reviewed the June 30, 2025 drafts of that certain Restructuring Support Agreement (the "RSA"), the terms of the TL DIP Credit Agreement and the ABL DIP Credit Agreement (as defined below) and have authorized management to finalize the RSA, the TL

Credit Agreement and ABL DIP Credit Agreement on terms materially consistent in the aggregate to the Companies, taken as a whole, with such drafts; and

**WHEREAS**, in connection with the foregoing, the Governing Bodies have reviewed and considered: (a) the approval of the entry of each of the Companies into that certain Restructuring Support Agreement (the "RSA") with respect to the restructuring of the Companies' capital structure, including through a sale of all or substantially all of the assets or equity of the Companies, pursuant to which an entity designated by or on behalf of certain of the Companies' secured lenders (or a duly authorized designee thereof) shall serve as the stalking horse bidder, subject to negotiation of mutually acceptable bidding procedures; (b) the approval of the entry of each of the Company Parties (the "DIP Loan Parties") into and performance under the TL DIP Credit Agreement, the ABL DIP Credit Agreement, the Additional Term Loan DIP Credit Documents and the Additional ABL DIP Credit Documents (each as defined herein); and (c) the implementation of each of the foregoing in a chapter 11 proceeding for each Company Party, to be commenced by the filing of Bankruptcy Petitions (as defined below) (collectively, the "Restructuring Matters"), each as described herein.

**NOW, THEREFORE, BE IT:**

I.   **Restructuring Support Agreement**

**RESOLVED**, that (i) the form of the RSA with such additions thereto, insertions therein and deletions therefrom as, with respect to each of the Company Parties, such Company Parties' Authorized Persons shall deem necessary, appropriate, or desirable and (ii) the performance of the respective obligations of such Company Party under the RSA, be, and they hereby are, approved;

**RESOLVED**, that the execution, delivery and performance by or on behalf of each Company Party of the RSA and all other agreements, instruments, certificates or other documents constituting exhibits to or required to be executed pursuant to, or which are necessary, appropriate or desirable in connection with the transactions contemplated by the RSA or otherwise related thereto to which such Company Party is a party or a signatory, and the consummation by such Company Party of the transactions contemplated thereunder, be, and each hereby is, approved, and that each such Authorized Person, be, and each of them acting singly hereby is, authorized and empowered, in the name and on behalf of such Company Party, to execute and deliver the RSA, with such additions thereto, insertions therein and deletions therefrom as any such Authorized Person shall deem necessary, appropriate or desirable, and to cause such Company Party to perform its obligations under the RSA as so executed and delivered in accordance with their terms;

**RESOLVED**, that the signature of any Authorized Person (defined below) of a Company Party to the RSA shall be conclusive evidence of the authority of such Authorized Person to execute and deliver the RSA; and

**RESOLVED**, that Authorized Persons of each Company Party be, and each of them hereby is, authorized and empowered, in the name of and on behalf of such Company Party, to take all actions, (including, without limitation, (i) the negotiation, execution, delivery and filing of any additional agreements, instruments, certificates or other documents, (ii) the modification or amendment of any of the terms and conditions of the RSA or the seeking of any waiver or consent in connection therewith, (iii) the payment of any consideration, fees or other amounts and (iv) the payment of expenses and taxes, in each case as any such Authorized Person shall deem necessary, appropriate or desirable) in order to effect the transactions contemplated under the RSA, and all acts of any such Authorized Person taken pursuant to the authority granted herein, or having occurred prior to the date hereof in order to effect such transactions, are

hereby approved, adopted, ratified and confirmed in all respects as the acts and deeds of such Company Party.

## II.    Chapter 11 Filing

**WHEREAS**, after due deliberation thereon, the Governing Bodies deem it desirable and in the best interest of the Companies and their respective stakeholders, creditors, and other parties in interest, that the Companies implement the Restructuring Matters and file or cause to be filed a voluntary petition for relief for each Company under the provisions of chapter 11 and title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (as amended, the "Bankruptcy Code") pursuant to and in accordance with the requirements of the organizational documents of each Company (the "Governing Documents") and applicable law, in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), and any other petition for relief or recognition or other order that may be desirable under applicable law in the United States (collectively, the "Bankruptcy Petitions").

**RESOLVED**, that that the filing of the Bankruptcy Petitions be, and hereby is, authorized and approved; and

**RESOLVED**, that each director and officer of each Company Party and any person delegated by the foregoing (each, an "Authorized Person" with respect to such Company Party) shall be, and each of them hereby is, authorized and directed for and on behalf of such Company to take all actions (including, without limitation, to negotiate and execute any documents, certificates, supplemental agreements, and instruments) on behalf of such Company Party in respect of the Restructuring Matters, to execute and file on behalf of such Company all petitions, schedules, statements, lists, applications and other motions, papers, or documents, and to take any and all action that they deem necessary or proper to obtain such relief, including, but not limited to, any action necessary or proper to maintain the ordinary course operations of such Company or any of such Company's subsidiaries' businesses.

## III.    Debtor-in-Possession Financing

**WHEREAS**, pursuant to that certain Super-Priority Senior Secured Debtor-In-Possession Credit and Guaranty Agreement (the "TL DIP Credit Agreement"), dated as of the date hereof, by and among DM Intermediate II Corporation, a New Jersey corporation ("Holdings"), Del Monte Foods Corporation II Inc., a New Jersey corporation ("Borrower"), the other DIP Loan Parties party thereto, as guarantors, the lenders from time to time party thereto ("TL Lenders") and Wilmington Savings Fund Society, FSB, as Administrative Agent and Collateral Agent (in such capacities, the "Term Loan Agent"), the Borrower has requested and the TL Lenders have agreed to make available to the Borrower a super-priority senior secured debtor-in-possession term loan credit facility (the "TL DIP Facility"), consisting of (i) term loans in an initial aggregate principal amount equal to $165,000,000 (the "TL DIP Term Loans") and (ii) a term loan facility in an aggregate principal amount not to exceed $247,500,000 (the "Roll-Up Loans"), which Roll-Up Loans will result from the conversion from and exchange of certain of the Prepetition Term Loans (as defined in the TL DIP Credit Agreement);

**WHEREAS**, pursuant to that certain ABL DIP Credit Agreement (the "ABL DIP Credit Agreement" and, together with the TL DIP Credit Agreement, the Additional ABL DIP Credit Documents (defined below) and the Additional Term Loan DIP Credit Documents (defined below), the "Transaction Documents"), dated as of the date hereof, by and among Holdings, Borrower, the other DIP Loan Parties party thereto, as guarantors, JPMorgan Chase Bank, N.A., as Administrative Agent (in such capacity, the

"ABL Agent") and the lenders from time to time party thereto (the "ABL Lenders"), the Borrower has requested and the ABL Lenders have agreed to make available to the Borrower a debtor-in-possession ABL credit facility (the "ABL DIP Facility");

**WHEREAS,** the DIP Loan Parties will receive direct and indirect benefits as a result of the transactions contemplated by the Transaction Documents to which such DIP Loan Parties are a party or signatory, and in that regard such DIP Loan Parties intend to enter into the Transaction Documents to which such DIP Loan Parties are a party or signatory; and

**WHEREAS**, the Governing Bodies deem it appropriate, advisable and in each DIP Loan Party's best interest to approve and authorize the entry by such DIP Loan Party into the Transaction Documents to which it is a party or signatory and to consummate the transactions contemplated thereby.

**NOW, THEREFORE, BE IT:**

**ABL DIP Credit Agreement**

**RESOLVED**, that each of (i) the form of the ABL DIP Credit Agreement with such additions thereto, insertions therein and deletions therefrom as, with respect to each DIP Loan Party, such DIP Loan Party's Authorized Persons shall deem necessary, appropriate, or desirable, (ii) the Additional ABL DIP Credit Documents (as defined below) to which such DIP Loan Party is party, (iii) the performance of the obligations of such DIP Loan Party under the ABL DIP Credit Agreement and the Additional ABL DIP Credit Documents and (iv) the grant of security interests in and liens upon the Collateral (as defined in the ABL DIP Credit Agreement), and the incurrence or guarantee of indebtedness, as applicable, under the ABL DIP Credit Agreement and other Loan Documents (as defined in the ABL DIP Credit Agreement), be, and they hereby are, approved;

**RESOLVED**, that the execution, delivery and performance by or on behalf of each DIP Loan Party of the ABL DIP Credit Agreement and all other agreements, instruments, certificates or other documents constituting exhibits to or required to be executed pursuant to, or which are necessary, appropriate or desirable in connection with the transactions contemplated by the ABL DIP Credit Agreement or otherwise related thereto to which each such DIP Loan Party is a party or a signatory (each an "Additional ABL DIP Credit Document" and collectively, the "Additional ABL DIP Credit Documents"), and the consummation by such DIP Loan Party of the transactions contemplated thereunder, be, and each hereby is, approved, and that each Authorized Persons of such DIP Loan Party, be, and each of them acting singly hereby is, authorized and empowered, in the name and on behalf of such DIP Loan Party, to execute and deliver the ABL DIP Credit Agreement and each Additional ABL DIP Credit Document, with such additions thereto, insertions therein and deletions therefrom as any Authorized Person of such DIP Loan Party shall deem necessary, appropriate or desirable, and to cause such DIP Loan Party to perform its obligations under the ABL DIP Credit Agreement and the Additional ABL DIP Credit Documents as so executed and delivered in accordance with their terms;

**RESOLVED**, that the signature of any Authorized Person of a DIP Loan Party to the ABL DIP Credit Agreement and any Additional ABL DIP Credit Document to which such DIP Loan Party is a party or signatory shall be conclusive evidence of the authority of such Authorized Person to execute and deliver the ABL DIP Credit Agreement and/or such Additional ABL DIP Credit Document; and

**RESOLVED**, that the Authorized Persons of each DIP Loan Party, be, and each of them acting singly hereby is, authorized and empowered, in the name of and on behalf of such DIP Loan Party, to take all actions, (including, without limitation, (i) the negotiation, execution, delivery and filing of, or consent to the ABL Agent's filing of, any additional agreements, instruments, certificates or other documents, (ii)

the modification or amendment of any of the terms and conditions of the ABL DIP Credit Agreement or any Additional ABL DIP Credit Document or the seeking of any waiver or consent in connection therewith, (iii) the payment of any consideration, fees or other amounts and (iv) the payment of expenses and taxes, in each case as any such Authorized Person of such DIP Loan Party shall deem necessary, appropriate or desirable) in order to effect the transactions contemplated under the ABL DIP Credit Agreement or any Additional ABL DIP Credit Document, and all acts of any such Authorized Person taken pursuant to the authority granted herein, or having occurred prior to the date hereof in order to effect such transactions, are hereby approved, adopted, ratified and confirmed in all respects as the acts and deeds of such DIP Loan Party.

**TL DIP Credit Agreement**

**RESOLVED**, that each of (i) the form of the TL DIP Credit Agreement with such additions thereto, insertions therein and deletions therefrom as, with respect to each DIP Loan Party, such DIP Loan Party's Authorized Persons shall deem necessary, appropriate, or desirable, (ii) the Additional Term Loan DIP Credit Documents (as defined below) to which such DIP Loan Party is party, (iii) the performance of the obligations of such DIP Loan Party under the TL DIP Credit Agreement and the Additional Term Loan DIP Credit Documents and (iv) the grant of security interests in and liens upon the Collateral (as defined in the TL DIP Credit Agreement), and the incurrence or guarantee of indebtedness, as applicable, under the TL DIP Credit Agreement and other Loan Documents (as defined in the TL DIP Credit Agreement), be, and they hereby are, approved;

**RESOLVED**, that the execution, delivery and performance by or on behalf of each DIP Loan Party of the TL DIP Credit Agreement and all other agreements, instruments, certificates or other documents constituting exhibits to or required to be executed pursuant to, or which are necessary, appropriate or desirable in connection with the transactions contemplated by the TL DIP Credit Agreement or otherwise related thereto to which such DIP Loan Party is a party or a signatory (each an "Additional Term Loan DIP Credit Document" and collectively, the "Additional Term Loan DIP Credit Documents"), and the consummation by such DIP Loan Party of the transactions contemplated thereunder, be, and each hereby is, approved, and that each such Authorized Person, be, and each of them acting singly hereby is, authorized and empowered, in the name and on behalf of such DIP Loan Party, to execute and deliver the TL DIP Credit Agreement and each Additional Term Loan DIP Credit Document, with such additions thereto, insertions therein and deletions therefrom as any such Authorized Person shall deem necessary, appropriate or desirable, and to cause such DIP Loan Party to perform its obligations under the TL DIP Credit Agreement and the Additional Term Loan DIP Credit Documents as so executed and delivered in accordance with their terms;

**RESOLVED**, that the signature of any Authorized Person of a DIP Loan Party to the TL DIP Credit Agreement and any Additional Term Loan DIP Credit Document to which such DIP Loan Party is a party or signatory shall be conclusive evidence of the authority of such Authorized Person to execute and deliver the TL DIP Credit Agreement and/or such Additional Term Loan DIP Credit Document;

**RESOLVED**, that Authorized Persons of each DIP Loan Party be, and each of them acting singly hereby is, authorized and empowered, in the name of and on behalf of such DIP Loan Party, to take all actions, (including, without limitation, (i) the negotiation, execution, delivery and filing of, or consent to the Term Loan Agent's filing of, any additional agreements, instruments, certificates or other documents, (ii) the modification or amendment of any of the terms and conditions of the TL DIP Credit Agreement or any Additional Term Loan DIP Credit Document or the seeking of any waiver or consent in connection therewith, (iii) the payment of any consideration, fees or other amounts and (iv) the payment of expenses and taxes, in each case as any such Authorized Person shall deem necessary, appropriate or desirable) in order to effect the transactions contemplated under the TL DIP Credit Agreement or any Additional Term

Loan DIP Credit Document, and all acts of any such Authorized Person taken pursuant to the authority granted herein, or having occurred prior to the date hereof in order to effect such transactions, are hereby approved, adopted, ratified and confirmed in all respects as the acts and deeds of such DIP Loan Party.

### IV.     Retention of Professionals

**RESOLVED**, that each Company Party, be, and hereby is, authorized, empowered, and directed to engage: (a) Herbert Smith Freehills Kramer (US) LLP as co-bankruptcy counsel; (b) Cole Schotz P.C. as co-bankruptcy counsel; (c) Appleby Law firm as British Virgin Islands counsel; (d) Alvarez & Marsal North America, LLC as financial advisor (e) PJT Partners LP as investment banker; (f) Stretto, Inc. as claims and noticing agent, in each case, upon the terms and conditions set forth in the engagement letters; and (g) any other legal counsel, accountants, financial advisors, restructuring advisors or other professionals that such Company Party deems necessary, appropriate or advisable, each to represent and assist such Company Party in carrying out its duties and responsibilities and exercising its rights under the Bankruptcy Code and any applicable law (including, but not limited to, the law firms filing any pleadings or responses), and in connection therewith, the Authorized Persons of each Company Party, be, and hereby are, authorized, empowered and directed, in accordance with the terms and conditions hereof, to execute appropriate retention agreements, pay appropriate retainers and/or fees, and to cause to be filed appropriate applications for authority to retain such services on behalf of such Company Party; and

**RESOLVED**, that the Authorized Persons of each Company Party, be, and hereby are, authorized, empowered, and directed, on behalf of such Company Party, to execute and file all petitions, schedules, motions, lists, applications, pleadings, and other papers, and to perform such further actions and execute such further documentation that the Authorized Persons in their absolute discretion deem necessary, appropriate, or desirable in accordance with these resolutions.

### V.     Further Actions and Prior Actions

**RESOLVED**, that each Company Party is hereby authorized to authorize (and each Company Party hereby authorizes) any direct or indirect subsidiary of such Company Party or any entity of which such Company Party or any subsidiary of such Company Party is the sole member, general partner, managing member, or equivalent manager, as applicable, to take each of the actions described in these resolutions or any of the actions authorized in these resolutions, and none of the resolutions contained herein, or action taken in furtherance hereto, shall have or cause an adverse effect on any such subsidiary or such Company Party's interest therein (including, without limitation, any automatic dissolution, divestiture, dissociation, or like event under applicable law);

**RESOLVED**, that in addition to the specific authorizations conferred upon the Authorized Persons herein, the Authorized Persons of each Company Party be, they hereby are, authorized to do all such other acts, deeds, and other things as such Company Party itself may lawfully do, in accordance with such Company Party's Governing Documents and applicable law, howsoever arising in connection with the matters herein, or in furtherance of the intentions expressed in the foregoing resolutions, including, but not limited to, the negotiation, finalization, execution, and delivery of any other agreements, certificates, instruments, powers of attorney, letters, forms, transfers, deeds, and other documents whatsoever and the payment of all fees and expenses, including, but not limited to, filing fees, in each case as the individual acting may in his or her absolute and unfettered discretion approve, deem, or determine necessary,

appropriate, or advisable, such approval, deeming, or determination to be conclusively evidenced by said individual taking such action or the execution thereof;

**RESOLVED**, that all acts, actions, and transactions relating to the matters contemplated by the foregoing resolutions done in the name of and on behalf of a Company Party, which acts would have been approved by the foregoing resolutions except that such acts were taken before the adoption of these resolutions, are hereby in all respects approved, confirmed, and ratified as the true acts and deeds of such Company Party with the same force and effect as if each such act, transaction, agreement, or certificate had been specifically authorized in advance by resolution of such Company Party's Governing Body;

**RESOLVED**, that any person dealing with any Authorized Person of a Company Party in connection with any of the foregoing matters shall be conclusively entitled to rely upon the authority of such Authorized Person, and by such Authorized Person's execution of any document, agreement, or instrument, the same shall be a valid and binding obligation of such Company Party enforceable in accordance with its terms; and

**RESOLVED**, that Governing Body of each Company Party has received sufficient notice of Joint Meeting of the Governing Bodies held on June 30, 2025 and the actions and transactions relating to the matters contemplated by the foregoing resolutions, as may be required by such Company Party's Governing Documents, or hereby waives any right to have received such notice.

\* \* \* \* \* \*

**The undersigned hereby certify that set forth above are resolutions of the Governing Bodies duly adopted at a meeting of the Governing Bodies held on June 30, 2025.**

**Del Monte Foods Holdings Limited**

_____
**Director**

_____
**Secretary**

**Del Monte Foods Holdings II, Inc.**
**Del Monte Foods Holdings, Inc.**
**Del Monte Foods, Inc.**
**DM Intermediate Corporation**
**DM Intermediate II Corporation**
**Del Monte Foods Corporation II Inc.**
**Contadina Foods, Inc.**
**Sager Creek Foods, Inc.**
**S & W Fine Foods, Inc.**
**Hi Continental Corporation**
**College Inn Foods**

**Joyba, Inc.**
**Kitchen Basics, Inc.**
**Green Thumb Foods**
**Del Monte Mexico Holdings LLC**
**Del Monte Ventures, LLC**
**Del Monte Chilled Fruit Snacks, LLC**

_____
**Secretary**